

FILED

05/24/2017

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 3, 2017

## IN RE COLBY L.[1]

### Appeal from the Chancery Court for Hamilton County
No. 15-A-012          Pamela A Fleenor, Chancellor

_____

### No. E2016-01785-COA-R3-PT

_____

Mother appeals the termination of her parental rights on the grounds of abandonment by willful failure to visit and support, contending that her failure to visit and support was not willful.  Discerning no error, we affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed

RICHARD H. DINKINS, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C. J., and J. STEVEN STAFFORD, P. J., W. S., joined.

Lauren L. Sherrell, Chattanooga, Tennessee, for the appellant, Beth A. M.

Hannah C. Stokes, Chattanooga, Tennessee, for the appellee, Christopher D. L. and Wendy G.L.

Terri Braswell Gilbert, Ooltewah, Tennessee, Guardian Ad Litem.

### OPINION

This appeal arises out of an action to terminate the parental rights of Beth A.M. ("Mother") to her son, Colby L., brought by Colby's father, Christopher D.L. ("Father") and stepmother, Wendy G.L. ("Stepmother").  Mother's rights were terminated on the grounds of abandonment by willful failure to visit and willful failure to support, and upon a finding that termination of her rights would be in Colby's best interest.  Mother does not contest the fact that she did not visit for three years prior to the filing of the petition, but argues that her failure to visit was not willful.  Further, Mother does not contest the fact that she did not support the child for a period of three years prior to the filing of the

_____

[1] This Court has a policy of protecting the identity of children in parental termination cases by initializing the last names of the parties.

petition but argues that her failure to support was due to her inability to make support payments.

## I. Facts and Procedural History

Colby L. was born in June 2005; by order entered in the Superior Court of Walker County, Georgia, on December 13, 2011, *nunc pro tunc* to September 20, 2011, custody was awarded to Father. At the time the order was entered, Mother was residing with Robert B.; the order provided that Mother's visitation would be supervised as long as she resided with him. Until August 2012, Mother's visitation was supervised by Four Points, Inc., of Lafayette, Georgia.

In August of 2012, visitation records show that Colby informed Mother, Father, and the Four Points staff members that he no longer wanted to visit Mother and wanted to continue living with Father. Of her own volition, Mother has not visited Colby since that time. Mother testified that a few months after her visits stopped she "[went] back to Four Points a few months later and they said that since the visits had stopped that there was no way to be able to get the visits to go back." In December 2013, she attempted to visit with him during a church service but was not permitted to do so.

On April 23, 2015, Father and Stepmother filed a petition to terminate Mother's parental rights and to allow Stepmother to adopt Colby. As grounds for termination, the petition alleged abandonment by failure to visit and failure to support, Tennessee Code Annotated section 36-1-102(1)(A)(i). On August 20, 2015, the court appointed Attorney Terri Gilbert as guardian ad litem for Colby.

The matter was heard on July 26, 2016, and on August 3, the court entered an order terminating Mother's rights on the grounds of willful failure to visit and willful failure to support and upon a finding that termination of Mother's rights was in Colby's best interest. Mother appeals, articulating the following issue:

1) Whether the Trial Court erred in finding the Appellant to have willfully abandoned her child pursuant to Tenn. Code Ann. § 36-1-113(g)(1) and § 36-1-1-2(1)(A)(i) when the record shows the Appellant made an attempt to see her child during the four (4) consecutive months before the petition to terminate her parental rights was filed; 2) furthermore, the Trial Court failed to make a finding as to whether the Appellant's attempts to visit her child may have been impeded or interfered with prior to the four consecutive months before the petition to terminate her parental rights was filed.

- 2 -

**II. Standard of Review**

Parents have a fundamental right to the care, custody, and control of their children. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007). However, that right is not absolute and may be terminated in certain circumstances. *Santosky v. Kramer*, 455 U.S. 745, 753-54 (1982); *State Dep't of Children's Serv. v. C.H.K.*, 154 S.W.3d 586, 589 (Tenn. Ct. App. 2004). The statutes on termination of parental rights provide the only authority for a court to terminate a parent's rights. *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004). Thus, parental rights may be terminated only where a statutorily defined ground exists. Tenn. Code Ann. § 36-1-113(c)(1); *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002); *In re M.W.A.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). To support the termination of parental rights, only one ground need be proved, so long as it is proved by clear and convincing evidence. *In the Matter of D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003).

Because the decision to terminate parental rights affects fundamental constitutional rights and carries grave consequences, courts must apply a higher standard of proof when adjudicating termination cases. *Santosky*, 455 U.S. at 766-69. A court may terminate a person's parental rights only if (1) the existence of at least one statutory ground is proved by clear and convincing evidence and (2) it is shown, also by clear and convincing evidence that termination of the parent's rights is in the best interest of the child. Tenn. Code Ann. § 36-1-113(c); *In re Adoption of A.M.H.*, 215 S.W.3d at 808–09; *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). In light of the heightened standard of proof in these cases, a reviewing court must adapt the customary standard of review set forth by Tenn. R. App. P. 13(d). *In re M.J.B.*, 140 S.W.3d 643, 654 (Tenn. Ct. App. 2004). As to the court's findings of fact, our review is *de novo* with a presumption of correctness unless the evidence preponderates otherwise, in accordance with Tenn. R. App. P. 13(d). *Id.* We must then determine whether the facts, "as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements" necessary to terminate parental rights. *Id.*

**III. Analysis**

Mother does not dispute that she did not visit Colby or pay support during the four months preceding the filing of the petition. She argues that "the record fails to show that [she] abandoned her child by willfully failing to visit her child or pay any support to her child" during the pertinent period.

Abandonment by failure to visit and failure to support is identified as a ground for termination of parental rights at Tennessee Code Annotated section 36-1-113(g)(1). It is defined in section 36-1-102(1)(A)(i) as:

For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or the guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent or parents or the guardian or guardians either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child.

In *In re Audrey S.,* 182 S.W.3d 838 (Tenn. Ct. App. 2005), this Court discussed willfulness in the context of termination cases:

The concept of "willfulness" is at the core of the statutory definition of abandonment. A parent cannot be found to have abandoned a child under Tenn. Code Ann. § 36–1–102(1)(A)(i) unless the parent has either "willfully" failed to visit.... In the statutes governing the termination of parental rights, "willfulness" does not require the same standard of culpability as is required by the penal code. Nor does it require malevolence or ill will. Willful conduct consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent. Conduct is "willful" if it is the product of free will rather than coercion. Thus, a person acts "willfully" if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing.... Failure to visit or support a child is "willful" when a person is aware of his or her duty to visit or support, has the capacity to do so, makes no attempt to do so, and has no justifiable excuse for not doing so. Failure to visit or to support is not excused by another person's conduct unless the conduct actually prevents the person with the obligation from performing his or her duty . . . or amounts to a significant restraint of or interference with the parent's efforts to support or develop a relationship with the child. The parental duty of visitation is separate and distinct from the parental duty of support. Thus, attempts by others to frustrate or impede a parent's visitation do not provide justification for the parent's failure to support the child financially.

The willfulness of particular conduct depends upon the actor's intent. Intent is seldom capable of direct proof, and triers-of-fact lack the ability to peer into a person's mind to assess intentions or motivations. Accordingly, triers-of-fact must infer intent from the circumstantial evidence, including a person's actions or conduct.

182 S.W.3d at 863–64.

- 4 -

**A. Abandonment by Failure to Visit**

To establish abandonment by failure to visit, a petitioner must show by clear and convincing evidence that the parent who failed to visit "had the capacity to do so, made no attempt to do so, and had no justifiable excuse for not doing so." *Jamie T. v. Crystal G.*, 2013 WL 1804263, No. M2012-02225-COA-R3-PT, at *3 (Tenn. Ct. App. Apr. 29, 2013).

With respect to this ground, the court made the following findings:

> The Court finds by clear and convincing evidence that Respondent's last visit with Colby was a supervised visit at Four Points, Inc., a supervised visitation program, on August 18, 2012. The Court finds that Respondent knew where the Child attended both school and church, because she went to both places at different times. Respondent caused a scene at Colby's church when she interrupted the service in an attempt to get Colby in December of 2013. Respondent has sent only one birthday card to Colby 7 or 8 years ago and it was three months late. The Court finds by clear and convincing evidence that for more than the four months immediately preceding the filing of this petition, Respondent willfully failed to visit the Child.

Mother argues that her failure to visit was not willful; in support she cites her testimony regarding her visits to Colby's school on two occasions and that, since losing custody of Colby in 2011 she had attempted on multiple occasions to contact Colby "through various means, including phone calls, written correspondence, electronic messages with the Appellees and their lawyer, as well as showing up in person at places frequented by Appellees and her son." Mother also argues that the trial court did not consider whether she was "impeded or interfered with when attempting to visit her child," citing her testimony that she was "discouraged" from contacting Father and Stepmother's attorney in order to arrange visitation with Colby.

Pivotal to our resolution of this case is the trial court's finding that Mother was not credible in her testimony; the court held that "[Mother's] perception is far different from reality." With regard to credibility determinations, this Court has stated:

> When a trial court has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, considerable deference must be accorded to the trial court's factual findings. Further, "[o]n an issue which hinges on the credibility of witnesses, the trial court will not be reversed unless there is found in the record clear, concrete, and convincing evidence other than the oral testimony of witnesses which contradict the trial court's findings."

*In re M.L.P.,* 228 S.W.3d 139, 143 (Tenn.Ct.App.2007) (citations omitted). This is a mandate to which we adhere, and we have not been cited to clear and convincing evidence which contradicts the credibility finding.

Mother concedes she did not visit Colby within the four months preceding the filing of the petition. While she argues in her brief that her visit to his school in March 2015 was an effort to visit with him, she testified at trial that the purpose of her visit was to leave "divorce papers and the custody papers, my name and number at the school for [the school] to give them to [Father]."[2] Mother's other testimony pertinent to this issue is related to events prior to the four month period. Significantly, while Mother testified that she met with several lawyers to attempt to secure court-ordered visitation, she had no evidence or proof of any such consultations and no action was taken in this regard. Again, the court's adverse credibility determination weighs against Mother's argument.

On the record before us, there is clear and convincing evidence that Mother abandoned Colby by failing to visit with him in the period of time from December 22, 2014 to April 22, 2015.

### B. Failure to Support

A failure to support is "'willful' when a person is aware of his or her duty to visit or support, has the capacity to do so, makes no attempt to do so, and has no justifiable excuse for not doing so." *In re Audrey*, 182 S.W.3d at 864.

With respect to this ground, the court made the following findings:

> The Court further finds that after [Father] obtained custody, [Mother] never paid any support for the Child. The Court further finds that [Mother] was able to provide support as she was employed at several different occupations at various times, and she admitted she is physically able to work. The Court finds by clear and convincing evidence that [Mother] willfully failed to support the Child for a period of more than four consecutive months immediately preceding the filing of this petition.

Mother concedes she did not support Colby but contends that her failure was not willful because the fact that she only had a high school education, that she lacked

---

[2] Even if the March 2015 visit to his school was an effort to visit Colby, this would constitute no more than token visitation, defined at Tennessee Code Annotated section 36-1-102(1)(C) as "the visitation, under the circumstances of the individual case, . . . nothing more than perfunctory visitation or visitation of such an infrequent nature or of such short duration as to merely establish minimal or insubstantial contact with the child."

significant job skills, and that she was legally blind hindered her ability to work, making it difficult to pay support. She also argues that the record shows that she attempted to send Colby money by mail, but that all of the envelopes were returned because of an incorrect address, and that she created a savings account for Colby.

Mother's asserted lack of significant job skills, high school education, and legal blindness has not prevented her from obtaining work; she testified that she was currently employed at a church nursery. Mother also testified that she was previously employed as a caregiver with Rosewood Assisted Living, which was "mostly cleaning and assisting residents . . . just manual work . . . [with] no reading involved." She testified that her total monthly income from employment, disability, and child support for her other child, equals about $1350.00 per month, along with food stamps and Medicaid. Mother did not provide any proof of the returned envelopes of money about which she testified or a bank statement from the savings account she testified that she created for Colby.

Mother's testimony that she is aware that it is her job as a parent to provide for Colby, that she was able to and did maintain employment, and that she had other sources of income is clear and convincing evidence that she willfully failed to support him in the period from December 22, 2014 to April 22, 2015.

## IV. Best Interest

Once a ground for termination has been proven by clear and convincing evidence, the trial court must then determine whether it is the best interest of the child for the parent's rights to be terminated, again using the clear and convincing evidence standard. The legislature has set out a list of factors at Tennessee Code Annotated section 36–1–113(i)[3] for the courts to follow in determining the child's best interest. The list of factors

---

[3] The factors at Tenn. Code Ann. § 36-1-113(i) are:

In determining whether termination of parental or guardianship rights is in the best interest of the child pursuant to this part, the court shall consider, but is not limited to, the following:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
(5) The effect a change of caretakers and physical environment is likely to have on the

in the statute is not exhaustive, and the statute does not require every factor to appear before a court can find that termination is in a child's best interest. *See In re S.L.A.,* 223 S.W.3d 295, 301 (Tenn. Ct. App. 2006) (citing *Tenn. Dep't of Children's Serv. v. T.S. W.,* No. M2001–01735–COA–R3–CV, 2002 WL 970434, at *3 (Tenn.Ct.App. May 10, 2002); *In re I.C.G.,* No. E2006–00746–COA–R3–PT, 2006 WL 3077510, at *4 (Tenn. Ct. App. Oct. 31, 2006)).

In looking to the list of factors, the court made the following findings in holding that termination of Mother's parental rights was in the best interest of the child:

> The Court finds that Respondent's mental and emotional status is detrimental to the Child and would prevent her from providing safe and stable care and supervision for the Child. She kidnapped Colby once from a birthday dinner and hid with him in a storage room in a mall. She also created a scene at Colby's church that scared him. T.C.A. §36-1-113(i)(8).
>
> The Court has previously discussed its findings with regard to T.C.A.§36-1-113 (i)(3) and (9), and determines that Respondent neither maintained regular visitation or other contact with the Child nor did she pay any support for [Colby].
>
> The proof established the Child calls [Stepmother] "mommie." The Petitioners provide medical care for Colby and pay for his private school tuition. The Petitioners diligently work with the Child daily on his academics and his sports and attend his school activities. The Court finds the Child has begun to thrive on this structure. The Child is emotionally attached to Petitioners and their children. Thus the Court finds that a meaningful relationship between Petitioners and the Child has been established and that a change in caretakers would have an adverse effect on the Child. T. C. A. §36-1-113(i)(4) and (5).

---

child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

The evidence does not preponderate against these findings of fact. Father testified that he and Stepmother pay for the child's private school education and regularly participate in school and sporting activities with Colby. Father also testified that Colby is an Honor Roll student and that he has many friends at school, church, and in the neighborhood near his home. Stepmother testified that Father is the coach to Colby's baseball team and has "a lot of respect for his [Father];" that Colby "does [not] want to be around his mom," refers to Stepmother as "mom," and Mother as "Beth;" and that she and Father have remained in the same house for at least three years, with no current plans to move. The record shows that Father and Stepmother provide Colby with a stable environment and that he has an attachment to both Father and Stepmother. We affirm the holding that termination of Mother's rights is in Colby's best interest

## V. Conclusion

For the foregoing reasons, we affirm the judgment of the trial court in all respects.

RICHARD H. DINKINS, JUDGE